# EXHIBIT A

# TRANS!T

ÜBERSETZUNGSBÜRO
TRANSLATION SERVICES
BUREAU DE TRADUCTION

TRANSIT
Seefeldstrasse 69
8008 Zürich
043 488 36 13

info@transitweb.ch
**www.transitweb.ch**

| CERTIFICATION | BEGLAUBIGUNG |
|---|---|
| I – Dominic de Neuville, manager of TRANSIT – hereby confirm that the attached documents are **true** and **correct translations** from **French (Switzerland)** into **English**. | Hiermit bestätige ich – Dominic de Neuville, Geschäftsleitung TRANSIT – dass die beiliegenden Dokumente von **Französisch (Schweiz)** auf **Englisch korrekt** und **wahrheitsgetreu** übersetzt wurden. |
| TRANSIT is an officially registered translation service provider in Switzerland. RegistrationNo.CH-020.1.058.749-6 | TRANSIT ist ein offiziell registriertes Übersetzungsbüro in der Schweiz. Firmennummer: CH-020.1.058.749-6 |

DOMINIC DE NEUVILLE
Übersetzungsbüro TRANSIT

**Official Certification**

Seen for authentication of the foregoing signature, affixed in our presence by

Mr. **Dominic Patric DE NEUVILLE**, born 17th July 1964, Swiss citizen of Degersheim SG, according to his information residing at Goldbachstrasse 56, 8700 Küsnacht ZH, personally known to us.

Zürich, 31st July 2013
BK no. 11653/ems
Fee CHF 20.00

**NOTARIAT RIESBACH-ZÜRICH**

Stefan Walder, Notary Public



QUALITY IS OUR SUCCESS.

## APOSTILLE

(Convention de la Haye du 5 octobre 1961)

1. Land: Schweizerische Eidgenossenschaft, Kanton Zürich
   Country. Swiss Confederation, Canton of Zurich
   Diese öffentliche Urkunde / This public document

2. ist unterschrieben von _Stefan Waldier_
   has been signed by

3. in seiner Eigenschaft als _Notar_
   acting in the capacity of

4. sie ist versehen mit dem Stempel/Siegel des/der / bears the stamp/seal of
   _Notariat Riesbach –_
   _Zürich_

Bestätigt / Certified

5. in / to 8090 Zürich / 8090 Zurich      6. am / the _3.1. Juli 2013_

7. durch die Staatskanzlei des Kantons Zürich
   by Chancery of State of the Canton of Zurich

8. unter / under Nr. _1862/2013_

9. Stempel/Siegel / Stamp/Seal      10. Unterschrift / Signature

D. Brennwald



**RÉPUBLIQUE ET CANTON DU JURA**

**TRIBUNAL CANTONAL**  Reçu le – 5 MARS 2013

COUR CIVILE

_____

*CC 146 / 2010*

Reçu le 2 7 SEP. 2012

Président a.h. : Philippe Guélat

Juges : Daniel Logos et Sylviane Liniger Odiet

Greffière : Nathalie Brahier

**ARRET DU 20 SEPTEMBRE 2012**

en la cause civile liée entre

**Banque Valiant SA (succédant à Banque Romande Valiant SA par suite de fusion)**,
Bundesplatz 4, 3011 Berne,
- représentée par **Me Claude Jeannerat**, avocat à Delémont,

**demanderesse,**

et

**Patrick Mercier**, 2208 Chardonnay Circle, Gibsonia, Allegheny County, PA 14044, USA,

**défendeur.**

————

**CONSIDÉRANT**

**En fait :**

A. Par mémoire de demande du 16 décembre 2010, la Banque Romande Valiant SA, à laquelle a succédé la demanderesse, a introduit action devant la Cour civile de ce siège contre le défendeur en retenant les conclusions suivantes :

1. Condamner le défendeur à payer à la demanderesse la somme de Euros 524'974.83 plus intérêts à 5 % dès le 1ᵉʳ mai 2010 sur Euros 500'000.00 et dès ce jour sur Euros 24'974.83;
2. Sous suite des frais et dépens.

A l'appui de ses conclusions, elle fait valoir qu'elle a repris les actifs et passifs de la Banque Jura Laufon, dont la créance faisant l'objet de la présente demande. Cette

2

demande est fondée sur le contrat du 4 octobre 2007 de crédit en compte courant, conclu avec le défendeur, contrat prévoyant un for judiciaire exclusif au domicile de la banque.

Aux termes dudit contrat, la demanderesse a octroyé au défendeur un crédit en compte courant jusqu'à concurrence de 500'000 Euros, destinés à l'assainissement de la société Bricelinecosmetics SA, dont il était prévu qu'il devienne actionnaire. C'est toutefois au défendeur que le crédit a été accordé.

Ce contrat de crédit prévoit un intérêt à 4,5 % par an sur 500'000 Euros aux échéances des 31 mars, 30 juin, 30 septembre et 31 décembre. Le bénéficiaire du crédit s'est engagé à payer les intérêts sur le solde débiteur calculé selon les principes applicables en matière commerciale aux conditions (taux d'intérêts et de commission) fixés par la banque selon la situation du marché de l'argent ainsi que l'ensemble des frais. Le contrat prévoit que le "solde créancier de ce compte est exigible et exécutoire en tout temps; de même que le solde débiteur peut être exigé et remboursé sans résiliation" (PJ 4 et 8).

Comme convenu, le montant de 500'000 Euros a été crédité en faveur de Bricelinecosmetics SA le 9 novembre 2007.

Il ressort des pièces produites par la demanderesse que seuls quatre acomptes, à valoir sur les intérêts arriérés ont été payés depuis lors, de sorte que les intérêts arriérés au 31 mars 2010 s'élevaient à 22'871.12 Euros (PJ 9).

Bricelinecosmetics SA a été déclarée en faillite par décision du Tribunal d'arrondissement de l'Est Vaudois le 22 septembre 2009. La procédure de faillite a été suspendue faute d'actifs et clôturée le 29 décembre 2009.

Compte tenu de cette faillite et du non-paiement des intérêts dus par le défendeur, en dépit de nombreux rappels et sommations, la demanderesse a dénoncé au remboursement l'intégralité du crédit au 30 avril 2010, par courrier recommandé du 21 avril 2010. Au 30 avril 2010, la créance de la banque s'établit comme il suit :

| | | |
|---|---|---|
| - Montant du crédit | Euros | 500'000.00 |
| - Intérêts arriérés au 31 mars 2010 | Euros | 22'871.12 |
| - Intérêts du 01 au 30 avril 2010 | Euros | 2'103.71 |
| Total | Euros | 524'974.83 |

Elle précise qu'à ce jour, aucun remboursement n'est intervenu et elle est sans nouvelle du défendeur.

Selon la demanderesse, le contrat de crédit conclu entre les parties le 4 octobre 2007 est un prêt de consommation au sens des articles 312 ss CO.
Elle s'est elle-même scrupuleusement acquittée de ses obligations en créditant la somme de 500'000 Euros sur le compte de Bricelinecosmetics SA, le 9 novembre

3

2007. En revanche, le défendeur n'a jamais respecté ses engagements. A de nombreuses reprises, il a adressé des courriels à la banque par lesquels il s'engage à payer les intérêts dus et lui demande de patienter. Même si quelques acomptes ont été versés, il est évident que le défendeur n'a pas respecté ses obligations contractuelles. Par ailleurs, il ne s'est plus manifesté depuis la faillite de Bricelinecosmetics SA. Dans ces circonstances, la demanderesse n'avait d'autre solution que de dénoncer le crédit au remboursement sans préavis impératif comme le contrat le lui permet. En tout état de cause, le prêteur peut se départir du contrat, selon l'article 107 CO, lorsque l'emprunteur ne paie pas un intérêt échu.

La demanderesse détermine le montant dû par le défendeur à l'échéance du délai de remboursement à 524'974.83 Euros. Dès l'échéance susmentionnée, elle réclame au défendeur un intérêt moratoire calculé conformément aux articles 104 et 105 CO, soit à 5 %, dès la demeure sur le montant en capital, à savoir 500'000.00 Euros, et dès l'ouverture de l'action, sur les intérêts échus.

B.    Par ordonnance du 30 mars 2012, notifiée au défendeur le 14 avril 2012, le mémoire de demande a été signifié au défendeur, à qui un délai de trois semaines a été imparti pour faire parvenir son mémoire de réponse et effectuer une avance de Fr. 22'000.- pour couvrir les frais judiciaires. Terme pour les débats a été fixé sur le 20 septembre 2012 à 09'00 heures, au Tribunal de ce siège.

Dans le délai imparti, le défendeur n'a pas produit de mémoire de réponse et n'a pas effectué l'avance de frais judiciaires requise.

Par ordonnance du 14 juin 2012, notifié le même jour au défendeur par dépôt à son intention au greffe du Tribunal de ce siège (art. 108 Cpcj), le défendeur a été déclaré déchu du droit de fournir une défense écrite et sommé pour la deuxième fois d'effectuer une avance de frais judiciaires de Fr. 22'000.- jusqu'au 6 juillet 2012 au plus tard, sous commination des conséquences prévues à l'article 285 Cpcj.

C.    A l'audience de ce jour, la demanderesse a confirmé les faits, moyens et conclusions de son mémoire de demande du 16 décembre 2010, précisant que, par suite de fusion, elle a succédé à Banque Romande Valiant SA dont elle a repris les actifs et passifs (cf. pièces produites). Elle a exposé que le défendeur n'avait depuis lors plus versé aucun acompte à valoir sur sa créance et qu'il n'a jamais contesté ni la dénonciation du prêt ni l'exactitude de son décompte.

Le défendeur, bien que régulièrement cité, n'a pas comparu à l'audience, ni personne en son nom, et n'a fourni aucune excuse. Il n'a également pas effectué l'avance de frais judiciaires requise. Son défaut a été formellement constaté et prononcé, la procédure se poursuivant de manière non contradictoire (art. 204 ss Cpcj).

4

**En droit :**

1.

1.1    Les parties ont conclu un contrat de crédit en compte courant le 4 octobre 2007 à
       Delémont (PJ 2).

       Le défendeur était et est toujours domicilié aux USA. Le litige comporte donc un
       élément d'extranéité. En effet, si l'une des parties a son siège ou son domicile à
       l'étranger, le litige est toujours de nature internationale (ATF 131 III 76).

1.2    Le contrat litigieux contient une élection de for.

       Selon l'article 5 LDIP, en matière patrimoniale, les parties peuvent convenir du
       tribunal appelé à trancher un différend né ou à naître à l'occasion d'un rapport de
       droit déterminé. La convention peut être passée par écrit, télégramme, télex,
       télécopieur ou tout autre moyen de communication qui permet d'en établir la preuve
       par un texte. Sauf stipulation contraire, l'élection de for est exclusive.

       En l'espèce, le rapport juridique en cause est de nature patrimoniale et les
       conditions de forme sont remplies (cf. Bernard DUTOIT, Droit international privé
       suisse, 4ème éd., 2005, note ad art. 5).

       Les conditions de l'article 5 étant remplies, c'est valablement que les parties ont
       choisi le for judiciaire exclusif du domicile de la banque, à savoir, au moment de la
       litispendance, les tribunaux jurassiens.

1.3    Il convient tout d'abord de préciser que, selon l'article 404 al. 1 Code de procédure
       civile suisse (CPC / RS 272), entré en vigueur le 1er janvier 2011, les procédures en
       cours à l'entrée en vigueur de la présente loi sont régies par l'ancien droit de
       procédure jusqu'à la clôture de l'instance. Dès lors, le mémoire de demande ayant
       été déposé en date du 16 décembre 2010, il convient d'appliquer le Code de
       procédure civile jurassien (Cpcj / RSJU 271.1).

1.4    Aux termes de l'article 5 al. 2 Cpcj, la Cour civile connaît, comme juridiction unique,
       de toutes les contestations d'intérêt matériel susceptibles de recours au Tribunal
       fédéral, à moins qu'elles ne ressortissent à une autre juridiction. Elle ne connaît
       toutefois des affaires dont la valeur est appréciable en argent que lorsque celle-ci
       est égale ou supérieure à Fr. 20'000.-.

       Au cas particulier, la demanderesse a déposé une action tendant au paiement de
       524'974.83 Euros, plus intérêts, basée sur un contrat de crédit en compte courant.

       Conformément à l'article 14 LiCPC (RSJU 271.1), les jugements rendus en
       première instance cantonale par la Cour civile postérieurement au 1er janvier 2011,
       dans les causes qui sont dorénavant du ressort du juge civil, sont susceptibles de

5

recours auprès d'une Cour civile du Tribunal cantonal de ce siège, composée d'autres juges et d'un autre greffier.

Il s'ensuit que la Cour civile de céans est compétente pour connaître de la présente procédure.

1.5     Les parties ont conclu une élection de droit. La question du droit applicable doit être contrôlée d'office sur la base de la loi du for (ATF 134 III 224 consid. 3.1).

Selon l'article 116 LDIP, le contrat est régi par le droit choisi par les parties (al. 1). L'élection de droit doit être expresse ou ressortir de façon certaine des dispositions du contrat ou des circonstances ; en outre, elle est régie par le droit choisi (al. 2).

En l'espèce, l'application du droit suisse ressort clairement du contrat de crédit du 4 octobre 2007 (PJ 2 de la demanderesse). Elle n'est pas litigieuse.

1.6     Le défendeur a été déchu du droit de produire une défense écrite et n'a d'ailleurs pas produit de mémoire de défense. Il a également été déclaré défaillant faute de comparaître à l'audience (art. 204 ss Cpcj), bien qu'il ait été cité valablement.

En cas de défaut, l'instance suit son cours et le juge rend ses décisions uniquement sur la base des conclusions de la partie non défaillante (art. 282 Cpcj). La partie adverse peut requérir la continuation de la procédure mais non contradictoirement (art. 204 Cpcj), ce qu'elle a fait en l'espèce.

Le Tribunal apprécie librement si les faits allégués par la partie comparante sont avérés. Il n'ordonne la preuve que s'il a des raisons de douter de son exactitude (art. 206 Cpcj). Les exigences relatives au degré de la preuve sont atténuées, sous réserve des dispositions relatives à la maxime de l'instruction (LEUCH/MARBACH/KELLERHALS/STERCHI, Die Zivilprozessordnun für den Kanton Bern, note 1c ad art. 283a dont la teneur est identique à celle de l'art. 206 Cpcj) non applicable en l'espèce.

2.
2.1     Le contrat précité conclu entre les parties doit être qualifié, en droit suisse, de contrat de crédit en compte courant.

Le contrat de compte courant est un contrat innommé en vertu duquel les prétentions et contre-prétentions portées en compte s'éteignent par compensation et une nouvelle créance prend naissance à concurrence du solde. Il y a novation lorsque le solde est arrêté et reconnu (TF 4A_127/2010 du 7 février 2011, consid. 5). Dans le contrat de crédit en compte courant, le titulaire du compte peut en tout temps prélever des sommes jusqu'à la limite fixée ou effectuer des remboursements, la banque se tenant constamment à disposition en vue d'accorder tout ou partie du crédit octroyé. L'intérêt n'est dû que sur la part de crédit effectivement prélevée. Son taux fluctue selon les conditions du marché, la banque

6

prélevant usuellement une commission calculée sur le solde négatif le plus élevé (Laurent ETTER, Le contrat de compte courant, thèse, Lausanne 1994, p. 120s ; RVJ 1997 p. 294ss et références citées).

2.2     Ce prêt, destiné à l'assainissement de la société Bricelinecosmetics SA (PJ 8 de la demanderesse) fait partie des crédits commerciaux qui ne sont pas assujettis à la nouvelle législation sur le crédit à la consommation (Xavier FAVRE-BULLE, Les opérations de crédits à l'épreuve de la nouvelle législation sur le crédit à la consommation : un premier bilan, journée 2003 de droit bancaire et financier, p. 119). En effet, le "consommateur" ne peut être qu'une personne physique, qui conclut le contrat dans un but pouvant être considéré comme étranger à son activité commerciale ou professionnelle, c'est-à-dire à des fins privées (art. 3). En effet, la loi fédérale du 23 mars 2001 sur le crédit à la consommation, à savoir la LCC (RS 221.214.1), est une loi de protection des consommateurs. Le crédit doit être contracté aux fins de satisfaire à des besoins privés (TERCIER/FAVRE, Les contrats spéciaux, 4ème éd., n. 3094ss).

En l'espèce, le prêt concédé était destiné à l'assainissement d'une société anonyme. Il ne s'agissait donc pas de la satisfaction de besoins privés.

3.

3.1     Il appartient à la demanderesse de prouver que le remboursement du prêt est exigible.

Le droit de la banque de demander le remboursement du crédit par anticipation est important. Il permet à la banque d'intervenir rapidement, notamment dès qu'elle perçoit une détérioration de la situation financière du preneur de crédit.

Selon l'article 20 des conditions générales, faisant partie intégrante du contrat précité (PJ 4 et 8 de la demanderesse), sous réserve de conventions séparées, la banque peut résilier avec effet immédiat toute relation d'affaires en cours, en particulier les crédits approuvés ou octroyés, les créances éventuelles devenant par là même directement exigibles. Par ailleurs, aux termes de l'article 5 du contrat précité, la demanderesse est autorisée à clôturer le compte à la fin d'un trimestre civil ou à tout autre moment et à reporter le solde à nouveau ou à en réclamer le paiement.

Au cas particulier, la société Bricelinecosmetics SA a été déclarée en faillite le 22 septembre 2009. La demanderesse a en conséquence, après sommation infructueuse du 26 mars 2010 (PJ 13), dénoncé au remboursement l'intégralité du crédit au 30 avril 2010, par courrier recommandé du 21 avril 2010 (PJ 14 de la demanderesse).

Il apparaît ainsi que la demanderesse a valablement dénoncé le prêt au remboursement et que sa créance est exigible.

7

3.2    Le compte courant emporte novation lorsque le solde du compte a été arrêté et reconnu (article 112 al. 2 CO; ATF 130 III 694 consid. 2.2.2). Les intérêts et les commissions deviennent capital par novation et portent eux-mêmes intérêts (ATF 130 III 694 consid. 2.2.3). Les commissions perçues régulièrement sur le capital mis à disposition sont traitées comme des intérêts et peuvent donc également devenir capital par novation. La fin du contrat de compte courant transforme en solde la position du compte existant à ce moment-là (ATF 130 III 694 consid. 2.2.3 et les références citées). Une nouvelle créance prend naissance à concurrence du solde (ATF 130 cité consid. 2.2.2)

Pour le surplus, le montant du prêt octroyé n'est pas contesté.

3.3    Le crédit octroyé dans une certaine devise doit être remboursé dans celle-ci (Carlo LOMBARDINI, Droit bancaire suisse, 2e ed., p. 839). Il ressort du contrat de crédit du 4 octobre 2007 (PJ 2 de la demanderesse) et des différents courriels échangés entre parties (PJ 15 de la demanderesse) que la monnaie contractuelle est l'Euro. C'est donc dans cette devise que le crédit doit être remboursé (SJ 2011 I 155).

3.4    Le défendeur n'ayant pas établi ni allégué avoir rembourser tout ou partie du capital, c'est donc un montant de 500'000 Euros qu'il doit être condamné à verser à ce titre à la demanderesse. Il doit également être condamné à lui payer les intérêts arriérés dus sur ledit capital, qui s'élèvent au total à 24'974.83 Euros au 30 avril 2010, selon décompte de la demanderesse, dont l'exactitude n'est pas contestée, et qui a été établi conformément aux dispositions contractuelles liant les parties.

4.
4.1    La demanderesse réclame encore des intérêts moratoires à 5 % sur le capital, à savoir 500'000 Euros, dès la demeure et à 5 % sur les intérêts échus, à partir de l'ouverture de l'action (art. 105 CO).

4.2    Selon l'article 104 al. 1 CO, le débiteur qui est en demeure pour le paiement d'une somme d'argent doit l'intérêt moratoire à 5 % l'an, même si un taux inférieur avait été fixé pour l'intérêt conventionnel.

S'agissant de la créance en capital, l'intérêt moratoire est dû dès la demeure du débiteur, soit, en l'espèce, dès l'expiration du jour de l'exécution fixé par la demanderesse en vertu du droit qui lui est réservé dans les dispositions contractuelles précitées et au moyen d'un avertissement régulier (art. 102 al. 2 CO).

Au vu de la dénonciation du prêt en cause au 30 avril 2010, selon lettre recommandée de la demanderesse du 21 avril 2010 (PJ 14), la créance en capital de 500'000 Euros porte ainsi intérêt moratoire à 5 % dès le 1er mai 2010.

4.3    S'agissant des intérêts conventionnels échus, le débiteur en demeure pour leur paiement ne doit l'intérêt moratoire qu'à partir du jour de la poursuite ou de la demande en justice (art. 105 al. 1 CO).

8

La demanderesse ne se prévalant pas, en l'espèce, de l'introduction d'une poursuite antérieure à la présente procédure, c'est dès le lendemain de la notification de la demande, soit dès le 15 avril 2012, que l'intérêt moratoire à 5 % est dû sur la somme de 24'974.83 Euros correspondant aux intérêts conventionnels échus (art. 159 al. 2 Cpcj; Luc THÉVENOZ, Commentaire romand - CO I, Bâle 2003, n. 2 ad art. 105 CO).

5.      Conformément aux articles 56 ss Cpcj, les frais de la procédure, fixés à Fr. 22'000.- et à prélever sur l'avance effectuée par la demanderesse, doivent être mis à la charge du défendeur succombant, qui est condamné à les rembourser à la demanderesse. Il doit également être condamné à payer les dépens de la demanderesse, taxés conformément à l'ordonnance fixant le tarif des honoraires d'avocats (RSJU 188.61), tenant compte notamment du fait qu'il s'agit d'une procédure par défaut.

## PAR CES MOTIFS

## LA COUR CIVILE

### après avoir délibéré et voté à huis clos

### condamne

le défendeur à payer à la demanderesse la somme de 524'974.83 Euros, avec intérêts à 5 % dès le 1er mai 2010 sur 500'000 Euros et dès le 15 avril 2012 sur 24'974.83 Euros ;

### met

les frais judiciaires, fixés à Fr. 22'000.- et prélevés sur l'avance effectuée par la demanderesse, à la charge du défendeur, qui est condamné à les rembourser à la demanderesse ;

### condamne

le défendeur à payer à la demanderesse la somme de Fr. 23'876.60 (y compris débours et TVA), à titre d'indemnité de dépens ;

### déboute

les parties du surplus éventuel de leurs conclusions ;

9

**informe**

- les parties qu'un appel, écrit et motivé, peut être formé contre le présent arrêt, dans les 30 jours à compter de sa notification, auprès de la Cour civile du Tribunal cantonal, Château, 2900 Porrentruy (art. 14 LiCPC, 308 ss et 405 al. 1 CPC) ;

- le défendeur défaillant qu'une requête en restitution au sens de l'article 148 CPC peut être présentée à la même autorité dans les 10 jours qui suivent celui où la cause du défaut a disparu mais au plus tard dans les 6 mois qui suivent l'entrée en force du présent arrêt ;

**ordonne**

la notification du présent arrêt :
- à la demanderesse, par son mandataire ;
- au défendeur, par dépôt à son intention au greffe du Tribunal de ce siège (art. 108 Cpcj), ainsi que par l'intermédiaire de Process Forwarding International, à Seattle.

- prononcé et motivé publiquement -

Porrentruy, le 20 septembre 2012

**AU NOM DE LA COUR CIVILE**
Le président a.h.:              La greffière :

Philippe Guélat              Nathalie Brahier

A T T E S T A T I O N

La greffière du Tribunal cnatonal atteste par la présente que le jugement ci-dessus est définitif et exécutoire.

Porrentruy, le 4 mars 2013

La greffière

Nathalie Brahier



## REPUBLIC AND CANTON OF JURA

**CANTONAL COURT**                                    Received March 5, 2013
CIVIL COURT

_____

***CC146 / 2010***
Received September 27, 2012

President            Philippe Guélat
Judges               Daniel Logos and Sylviane Liniger Odiet
Clerk of the Court   Nathalie Brahier

### JUDGMENT OF SEPTEMBER 20, 2012

in the civil case between

**Bank Valiant SA (succeeding Banque Romande Valiant SA as the result of a merger),**
Bundesplatz 4, 3011 Bern,
-      represented by **Attorney-at-Law Claude Jeannerat**, lawyer located in Delémont,

**Plaintiff,**

and

**Patrick Mercier**, 2208 Chardonnay Circle, Gibsonia, Allegheny County, PA 14044, USA,

**Defendant.**

### WHEREAS

**De facto:**

A.      In its statement of claim on December 16, 2010, Banque Romande Valiant SA, which was
        succeeded by the Plaintiff, brought an action before the Civil Court of this forum against the
        Defendant by entering the following pleadings:

        1.      To order the Defendant to pay to the Plaintiff the sum of 524,974.83 Euro plus interest at 5%
                from May 1, 2010, on the principal of 500,000.00 Euro and as of this day interest of 24,974.83
                Euro;
        2.      To claim costs and expenses.

        In support of its pleadings, the Plaintiff has submitted that it took over the assets and liabilities of
        the Bank Jura Laufen, including the claim which is the subject of these proceedings. These
        proceedings are based on the contract agreed with the Defendant on October 4, 2007, for a current
        account loan, a contract providing for the exclusive place of jurisdiction being the domicile of the
        Bank.

2

Under the terms of the contract, the Plaintiff granted the Defendant a loan on a current account up to a maximum of 500,000 Euro, intended for the financial restructuring Bricelinecosmetics SA, of which company it was envisaged that the Defendant was to become a shareholder. It is, however, to the Defendant that the loan was granted.

This loan contract provided for an interest rate of 4.5% *per annum* on 500,000 Euro with the interest being payable on March 31, June 30, September 30, and December 31. The beneficiary of the loan was to pay interest on the balance due calculated according to the commercial principles applicable to conditions (interest and commission rates) fixed by the Bank according to market situations together with overall costs. The contract provides that the "loan balance is due and enforceable at all times; likewise the balance might be required and reimbursed without notice" (Exhibits 4 and 8).

As agreed, the amount of 500,000 Euro was credited to Bricelinecosmetics SA on November 9, 2007.

It appears from the Exhibits submitted by the Plaintiff that only four payments, made on arrears of interest, have been paid since then, with the result that the arrears of interest as of March 31, 2010 amounted to 22,871.12 Euro (Exhibit 9).

Bricelinecosmetics SA was declared bankrupt by a decision of the District Court of Est Vaudois on September 22, 2009. Bankruptcy proceedings were suspended due to lack of assets and were concluded on December 29, 2009.

Given this bankruptcy and the non-payment of interest due by the Defendant, despite numerous reminders and warnings, the Plaintiff gave notice demanding payment of the full loan on April 30, 2010, sent by registered mail on April 21, 2010. As of April 30, 2010, the debt due to the Bank is stated as follows:

| | | | |
|---|---|---|---|
| - | Credit amount | Euro | 500,000.00 |
| - | Interest arrears as of March 31, 2010 | Euro | 22,871.12 |
| - | Interest from April 1 to April 30, 2010 | Euro | 2,103.71 |
| Total | | Euro | 524,974.83 |

The Plaintiff affirms that up to this day, no repayment has been received and that the Plaintiff has no news of the Defendant.

According to the Plaintiff, the loan contract entered into between the parties on October 4, 2007 is a consumer loan within the meaning of Article 312 *et sequentes [Swiss]* Code of Obligations.

The Plaintiff itself has scrupulously discharged its obligations by crediting the sum of 500,000 Euro to the account of Bricelinecosmetics SA, on November 9, 2007.

On the other hand, the Defendant has never complied with his commitments. Repeatedly, he has sent emails to the Bank in which he undertakes to pay the interest due and asks the Bank to wait. Even if a few installments have been paid, it is clear that the Defendant has breached his contractual obligations. By the way, he has not further expressed himself since the bankruptcy of Bricelinecosmetics SA. In these circumstances, the Plaintiff has had no alternative but to demand the repayment of the loan without any mandatory period of notice as the contract permits. In any event, the lender is able to dispose of the contract, pursuant to Article 107 of the *[Swiss]* Code of Obligations, when the borrower does not pay interest arrears.

The Plaintiff has determined the amount due by the Defendant up to the stated reimbursement deadline as being 524,974.83 Euro. Since the above-mentioned deadline, the Plaintiff has claimed a moratorium interest from the Defendant calculated pursuant to Articles 104 and 105 of the *[Swiss]* Code of Obligations, being 5% since the default on sum of the principal amount, namely 500,000.00 Euro, and since the issuing of proceedings, on the accrued interest.

B.   By order of March 30, 2012, notified to the Defendant on April 14, 2012, the statement of claim was served on the Defendant, with three weeks being given to allow for the arrival of his statement of reply and for him to advance the sum of *[Swiss]* Francs 22,000 to cover the Court costs. The time and date for pleadings were set for September 20, 2012 at 09.00 hours, at the Court of this forum.

Within this set time limit, the Defendant did not produce a statement of reply and did not forward the required legal fees.

By order of June 14, 2012, notified the same day to the Defendant by filing it on his behalf at the registry of the Court of this forum  (Article 108 of the Jura Code of Procedures), the Defendant was informed that he forfeited his right to produce a written defense and, for the second time, it was requested that he advances the applicable judicial costs of *[Swiss]* Francs 22,000 by July 6, 2012 at the latest, under threat of the consequences provided for in Article 285 of the Jura Code of Civil Procedures.

C.   At today's hearing, the Plaintiff confirmed its submissions in respect of facts, grounds and pleadings in its request of December 16, 2010, stating that, as a result of a merger, it had succeeded Bank Romande Valiant SA whose assets and liabilities it had taken over (*cf.* Exhibits). It stated that the Defendant had since then paid no further installment on the balance due and that he had never challenged the termination of the loan nor the accuracy of its calculation.

The Defendant, although regularly notified, has not appeared at the hearing, nor anyone on his behalf, and nor has he provided any excuse. He also has not advanced the required legal fees. His default has been formally established and declared, the procedure following a non-adversarial manner (Article 204 *et sequentes* of the Jura Code of Civil Procedures).

**De jure:**

1.

1.1    The parties concluded a loan contract on a current account on October 4, 2007 in Delémont (Exhibit 2)

The Defendant was then and is still domiciled in the USA. The dispute has therefore a foreign element. Indeed, if one of the parties has its residence or domicile abroad, the dispute is always of an international nature (*[Swiss]* Supreme Federal Court 131 III 76).

1.2    The contract in question contains an election of jurisdiction.

Under Article 5 of *[Swiss]* Federal law on private international law, in matters of assets, the parties may agree on the Court to be called upon in order to decide on a dispute which has arisen or is about to arise due to its relationship with a determined right. The contract can be sent in writing, by telegram, telex, fax, or by any other means of communication which allows it to be established that it has been communicated, proven by means of a text. Unless otherwise stipulated, the election of jurisdiction is exclusive.

In this case, the legal relationship in question pertains to an assets nature whose formal requirements have been complied with (*cf.* Bernard DUTOIT, *[Swiss]* International Private Law, 4th edition 2005, note on Article 5).

The conditions of Article 5 having being met, it is valid that the parties have chosen the forum of the Jura Courts, that is, at the time of the *lis pendens,* being the domicile of the Bank, as exclusive legal jurisdiction.

1.3    It must first be noted that, according to Article 404, paragraph 1 of the *[Swiss]* Code of Civil Procedures (Codified system 272), which came into force on January 1, 2011, the ongoing procedures at the entry into force of this law are governed by the old law of procedures until the end of the proceedings. Therefore, as the statement of claim having been filed as of December 16, 2010, it is proper to apply the Jura Code of Civil Procedures (Codified system of the laws of the Canton of Jura 271.1).

1.4    Pursuant to Article 5, paragraph 2 of the Jura Code of Civil Procedures, the Civil Court hears, as a sole jurisdiction, all cases appealable to the Federal Court, unless they were to resort to another jurisdiction. The Court however hears only cases whose value is significant in money terms and this value is equal to or greater than *[Swiss]* Francs 20,000.-

In this particular case, the Plaintiff has filed an action for the payment of 524,974.83 Euro, plus interest, based on a contract of a current account loan agreement.

In accordance with Article 14 of the Introductory Law for the Code of Civil Procedure (Codified system of the laws of the Canton of Jura 271.1), first instance Cantonal judgments rendered by the Civil Court after January 1, 2011, in the proceedings which are now the responsibility of a Civil judge, are appealable to a Civil Court of the Cantonal Court of this forum, composed of other Judges and another Clerk of the Court.

It follows that this Civil Court is competent to hear the present proceedings.

1.5 The parties agreed upon a choice of jurisdiction. The question of the applicable law must be examined *ex officio* on the basis of the law of the jurisdiction (*[Swiss]* Supreme Federal Court 134 III 224 grounds 3.1).

According to Article 116 of the *[Swiss]* Federal law on private international law, the contract is governed by the law chosen by the parties (paragraph 1). The choice of law must be express or to stem in a certain manner from the provisions of the contract or from its circumstances. In addition, it is governed by the chosen law (paragraph 2)

In this case, the application of *[Swiss]* law is clear from the loan contract of October 4, 2007 (Plaintiff exhibit 2). It is not in contention.

1.6 The Defendant has forfeited his right to produce a written defense and, moreover, he has actually never produced a statement of defense. He has also been stated to have defaulted by not appearing at the hearing (Article 204 *et sequentes* of the Jura Code of Civil Procedures), although he was properly summoned.

In the event of default, the proceedings run their course and the Judge makes decisions only on the basis of the pleadings of the non-defaulting party (Article 282 of the Jura Code of Civil procedures). The opposing party may require the continuation of proceedings but not in an adversarial manner (Article 204 of the Jura Code of Civil Procedures), which it has done in this case.

The Court is free to assess if the facts alleged by the appearing party are proven. It does not order proof be given unless there are reasons to doubt their accuracy (Article 206 of the Jura Code of Civil Procedures). The requirements relative to the degree of proof are mitigated, subject to provisions concerning the instruction rule (LEUCH /MARBACH /KELLERHALS /STERCHI, *Civil process ordinance for the Canton of Bern*, note 1c referring to Article 283a whose content is identical to that of Article 206 of the Jura Code of Civil Procedures) not applicable in this case.

2.

2.1 The above mentioned contract concluded between the parties must be classified, under Swiss law, as a current account loan contract.

The current account contract is an innominate contract, under which claims and counterclaims brought into the account are extinguished by compensation and a new claim of debt arises up to the amount of the balance. There is novation when the balance is adjusted and recognized (*[Swiss]* Supreme Federal Court 4_127/2010 February 7, 2011, consideration 5). In the current account loan contract, the account holder may from time to time deduct amounts up to the set limit of the loan, or he can make repayments, with the Bank being disposed to provide all or part of the loan granted. Interest is due on the part of the loan actually drawn down. Its rate can fluctuate according to market conditions, with the Bank usually taking a commission calculated on the highest negative balance (Laurent ETTER, *The Current Account Contract*, thesis, Lausanne, 1994, page 120 *et sequentes*; *Revue de Vulgarisation Juridique (Legal Education Review)* 1997, page 294 *et sequentes*, and references cited).

2.2    The loan, intended for the financial restructuring of Bricelinecosmetics SA (Plaintiff exhibit 8) forms part of commercial loans which are not subject to the new consumer credit legislation (Xavier FAVRE-BULLE, *Loan transactions putting the new consumer credit legislation to the test: a first assessment*, Banking and financial law Journal, 2003, page 119). Indeed, the "consumer" can only be a natural person who agrees the contract for a purpose which can be regarded as outside his trade or profession, that is to say, for private purposes (Article 3). Indeed, the *[Swiss]* Federal Law of March 23, 2001 on consumer credit, that is to say, the *[Swiss]* Federal Consumer Credit Law (Codified system 221.214.1), is a law for the protection of consumers. The loan must be contracted to satisfy private needs (TERCIER / FAVRE, *Special Contracts*, 4th edition, number 3,094 *et sequentes*).

In this case, the loan granted was intended for the financial restructuring of an incorporated joint-stock company. It was therefore not for private needs.

3.

3.1    The onus is on the Plaintiff to prove that the repayment of the loan is due for payment.

The right to the Bank to request repayment of the loan before the term is up is important. It allows the Bank to intervene quickly, particularly as soon as it sees a deterioration in the financial situation of the borrower.

Pursuant to Article 20 of the general conditions, being an integral part of the above mentioned contract (Plaintiff exhibits 4 and 8), subject to separate contracts, the Bank may terminate with immediate effect any ongoing business relationship, in particular, loans approved or granted, with contingent balances becoming, in so doing, immediately repayable. Furthermore, under the terms of Article 5 of the above mentioned contract, the Plaintiff is authorized to close the account at the end of a calendar quarter or at any other time and to carry over the balance again or to demand its repayment.

In this particular case, Bricelinecosmetics SA was declared bankrupt on September 22, 2009. As a consequence of this, the Plaintiff, after an unsuccessful writ of March 26, 2010 (Exhibit 13), demanded the repayment of the full amount on April 30, 2010, sent by registered mail on April 21, 2010 (Plaintiff exhibit 14).

It appears therefore that the Plaintiff has validly demanded the loan repayment and that its balance is due for payment.

3.2      A current account is renewed when the balance of the account is calculated and recognized (Article 112, paragraph 2 *[Swiss]* Code of Obligations; *[Swiss]* Supreme Federal Court 130 III 694, grounds 2.2.2). Interest and fees become capital by novation and are subject to interest themselves (*[Swiss]* Supreme Federal Court 130 III 694, grounds 2.2.3). Commissions received regularly on the capital made available are treated as interest and can thus also become capital by novation. The end of the current account contract changes to a balance the position of the existing account at that moment (*[Swiss]* Supreme Federal Court 130 III 694, grounds 2.2.3, and cited references). A new receivable debt arises up to the amount of the balance (*[Swiss]* Supreme Federal Court 130 cited grounds 2.2.2)

Furthermore, the amount of the loan granted is not disputed.

3.3      The loan granted in a certain currency must be paid back in the same currency (Carlo LOMBARDINI, *[Swiss] Banking Law*, 2nd edition, page 839). It appears from the loan contract of October 4, 2007 (Plaintiff exhibit 2) and from various emails exchanged between the parties (Plaintiff exhibit 15) that the contractual currency is the Euro. It is therefore in this currency that the loan must be repaid (Legal Services 2011 1 155).

3.4      With the Defendant not having established nor alleged to have repaid all or part of the capital, there is therefore an amount of 500,000 Euro which he should be obliged to pay to the Plaintiff as such. He must also be obliged to pay back-interest on said capital, amounting in total to 24,974.83 Euro as of April 30, 2010, according to calculation by the Plaintiff, of which the accuracy is not disputed, and which was established in accordance with the contractual provisions binding on the parties.

4.

4.1      In addition, the Plaintiff is claiming default interest at 5% on the capital amount, namely 500,000 Euro, since the default, and 5% on the interest accrued, since the start of proceedings (Article 105 of the *[Swiss]* Code of Obligations).

4.2      Pursuant to Article 104 paragraph 1 of the *[Swiss]* Code of Obligations, the debtor who is in default for the payment of a sum of money owes moratorium interest at 5% *per annum*, even if a lower rate had been fixed for the conventional interest.

Regarding the capital balance, moratorium interest is due from the default of the debtor, either, specifically, from the expiration of the day for execution set by the Plaintiff under the law which refers to it in the above mentioned contractual provisions and by the means of a regular warning (Article 102 paragraph 2 of the *[Swiss]* Code of Obligations).

In the light of the demand for repayment of the loan in question on April 30, 2010, by registered mail sent by the Plaintiff on April 21, 2010 (Exhibit 14), the debt capital of 500,000 Euro carries also a moratorium interest of 5% as of May 1, 2010.

4.3      With regard to accrued interest, the debtor in default of the interest payments does not owe the moratorium interest except from the day of acquittal or of the proceedings (Article 105, paragraph 1 of the *[Swiss]* Code of Obligations).

The Plaintiff not having, in this case, requested the introduction of a dismissal prior to the present proceedings, is entitled, since the day following the notification of the summons, that is to say from April 15, 2012, to moratorium interest at 5% interest due in the sum of 24,974.83 Euro corresponding to agreed accrued interest (Article 159, paragraph 2, Jura Code of Civil Procedures; Luc THÉVENOZ, *Legal Commentary for French-speaking Switzerland, [Swiss]* Code of Obligations I, Basel 2003, number 2 referring to Article 105).

5.      According to the Articles 56 *et sequentes* of the Jura Code of Civil Procedures, the costs of the proceedings, set at *[Swiss]* Francs 22,000.- and due to be paid in advance by the Plaintiff, must be borne by the succumbing Defendant who is obliged to pay these to the Plaintiff. He must also be ordered to pay the costs of the Plaintiff, taxed in accordance with the Court's order fixing the fees payable to lawyers (Codified system of the Laws of the Canton of Jura 188.61), particularly keeping in mind the fact that these are default proceedings.


### FOR THESE REASONS THE CIVIL COURT

#### after having deliberated and voted behind closed doors

#### adjudges

the Defendant to pay to the Plaintiff the sum of 524,974.83 Euro plus interest from 5% from May 1, 2010, on the principal of 500,000.00 Euro and interest from April 15, 2012 on the sum of 24,974.83 Euro;

#### imposes

the legal expenses, fixed at *[Swiss]* Francs 22,000 and paid in advance by the Plaintiff, on the Defendant who is obliged to reimburse these to the Plaintiff;

#### adjudges

the Defendant to pay to the Plaintiff the sum of *[Swiss]* Francs 23,876.60 (including disbursements and value added tax therein), as party compensation;

#### dismisses

any other statements of claim of the parties;

**informs**

the parties that an appeal, written and justified, can be entered against this judgment, within 30 days of its notification to the Cantonal Court of the Civil Court at Château, 2900 Porrentruy (Article 14 of the Introduction Law of the Code of Civil Procedures, 308 *et sequentes* and 405, paragraph 1 of the *[Swiss]* Code of Civil Procedures),

the absent Defendant that a request for reinstatement pursuant to Article 148 of the *[Swiss]* Code of Civil Procedure may be submitted to the same authority within 10 days following the day on which the cause of the default has disappeared but, at the latest, within 6 months following the entry into force of the present judgment;

**orders**

the notification of this judgment:
-   to the Plaintiff, through it authorized representative,
-   to the Defendant, by filing it on his behalf at the Registry of the Court of this forum (Article 108 of the Jura Code of Procedures), as well as through Process Forwarding International agency, in Seattle.

delivered and justified publicly

Porrentruy, on September 20, 2012

**ON BEHALF OF THE CIVIL COURT**

| **President** | **Clerk of the Court** |
|---|---|
| *[Illegible signature]* | *[Illegible signature]* |
| Philip Guélat | Nathalie Brahier |

ATTESTATION

The Clerk of the Cantonal Court hereby attests that the above judgment is final and enforceable.

Porrentruy, on March 4, 2013

Clerk of the Court
*[Illegible signature]*
Nathalie Brahier

*[Round seal with emblem bearing the words*
*"Cantonal Court of the Republic and Canton of Jura"]*